UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIMBERSTONE MANAGEMENT LLC, )
)
        Plaintiff, )
   v. )   2014-CV-5502
)
IDAHO GOLF PARTNERS, INC, )
)
        Defendant. )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Now before the Court is Defendant Idaho Golf Partners, Inc.'s ("Idaho Golf") motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). For the following reasons, Idaho Golf's motion is granted.

## BACKGROUND[1]

Plaintiff TimberStone Management, LLC's ("TimberStone") is an Illinois limited liability company, which owns and operates the TimberStone Golf Course in Iron Mountain, Michigan (the "Michigan TimberStone Golf Course"). TimberStone maintains its corporate headquarters in Chicago, Illinois. TimberStone's management is centered in their Chicago office, which also serves as a repository for virtually all of their corporate records.

---

[1] The Court accepts the uncontested allegations in TimberStone complaint as true and resolves all genuine factual disputes in TimberStone's favor. *Purdue Research Found v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).

1

Idaho Golf is an Idaho domestic company located and doing business in Caldwell, Idaho. Idaho Golf owns and also operates the TimberStone golf course in Caldwell, Idaho (the "Idaho TimberStone Golf Course"). Idaho Golf opened the Idaho TimberStone Golf Course in July 2011.

TimberStone owns the United States Trademark Registration for the "TIMBERSTONE" mark to be used for its golf course (the "TIMBERSTONE Registration"). The TIMBERSTONE Registration was filed on January 12, 2012 and was formally registered on June 11, 2013. The TIMBERSTONE Registration notes that the owner of the Trademark is TimberStone.

Since June 1996, TimberStone has used the "TIMBERSTONE" moniker (the "TIMBERSTONE Mark") in commerce to identify and distinguish the Michigan TimberStone Golf Course, which opened to the public on June 1, 1997. Since then, the TIMBERSTONE Mark has been continuously used in association with the Michigan TimberStone Golf Course and through TimberStone's licensees on various golf-related items. Since its inception, TimberStone has engaged in an extensive national advertising campaign of the Michigan TimberStone Golf Course and has been recognized as one of the preeminent golf course in the United States.

Since October 1997, TimberStone has operated its website under the domain name www.timberstone.com (the "TIMBERSTONE Website"). The TIMBERSTONE Website provides information about the Michigan TimberStone Golf Course, its pricing structure, news, events, offers and indirect sales, and

accommodates reservation requests from prospective visitors to the Michigan TimberStone Golf Course.  TimberStone also maintains numerous social media platforms on Facebook and Twitter, incorporating the TIMBERSTONE Mark.

Without prior authorization from TimberStone to use the TIMBERSTONE Mark, in February 2011, Idaho Golf obtained and assumed the business name "TimberStone Golf Course" from the Idaho Secretary of State.  After the acquisition of the name, Idaho Golf began using the name to promote the Idaho TimberStone Golf Course.  In April 2011, Idaho Golf registered the domain name www.playtimberstone.com.  In June 2011, Idaho Golf opened the Idaho TimberStone Golf Course.

On April 4, 2012, TimberStone discovered Idaho Golf's usage of the TIMBERSTONE Mark and immediately sent a cease and desist letter to Idaho Golf.  The cease and desist letter identified TimberStone as the owner of Michigan TimberStone Golf Course and was sent from its counsel in Chicago, Illinois.  On April 19, 2012, Idaho Golf responded to the cease and desist letter and sent a letter to TimberStone in Chicago, Illinois.

Between April 2012 and July 2013, counsel for Idaho Golf in Idaho engaged in multiple telephone conversations with TimberStone in Illinois.  In the course of these discussions Idaho Golf was again informed of TimberStone's common law rights to the TIMBERSTONE Mark.  Idaho Golf refused to discontinue its use of the TIMBERSTONE Mark.

On July 19, 2013, TimberStone became aware of Idaho Golf's Facebook page advertising the "TimberStone Golf Course" in Caldwell, Idaho. TimberStone immediately reported the unauthorized use of the TIMBERSTONE Mark to Facebook, which removed the content. On August 2, 2013, TimberStone sent Idaho Golf a copy of the TIMBERSTONE Registration. Despite Idaho Golf's knowledge of the federal registration for the TIMBERSTONE Mark, Idaho Golf did not discontinue its use of the term. Instead on August 19, 2013, Idaho Golf began the process of registering the TIMBERSTONE Mark with the Idaho Secretary of State.

After Idaho Golf's previous Facebook page had been removed, Idaho Golf created a new Facebook ("Idaho Golf's Second Facebook Page") page advertising the Idaho TimberStone Golf Course. Idaho Golf's Second Facebook Page was in use between July 2013 and April 2014. When TimberStone discovered Idaho Golf's Second Facebook Page in April 2014, Facebook was made aware of the infringement and immediately removed the page for the second time. Shortly after Idaho Golf's Second Facebook Page was removed by Facebook, Idaho Golf's counsel sent an e-mail to TimberStone in Illinois, offering TimberStone $1,000 to acquire the limited use of the TIMBERSTONE Mark. TimberStone rejected the offer and again demanded that Idaho Golf cease its use of the TIMBERSTONE Mark. Idaho Golf has continued to use the TIMBERSTONE Mark to market the Idaho TimberStone Golf Course.

On July 14, 2014, Idaho Golf filed an action under the Lanham Act and other federal claims in conjunction with state law causes of action in Idaho federal court. *Idaho Golf Partners v. TimberStone Management, LLC et al.*, No. 14 cv 233 (D. Idaho 2014). On July 18, 2014, TimberStone filed the instant complaint in the United States District Court for the Northern District of Illinois. TimberStone's complaint alleges seven causes of action: (1) federal trademark infringement; (2) unfair competition and false designation of origin; (3) federal trademark dilution; (4) cybersquatting; (5) violation of Illinois deceptive practices act; (6) common law trademark and trade name infringement; and (7) intentional interference with prospective economic advantage. On August 11, 2014, Idaho Golf submitted the instant motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In response to Idaho Golf's motion to dismiss, TimberStone has submitted a request to engage in jurisdictional discovery if the Court sees fit to grant Idaho Golf's motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal where a court lacks personal jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). Once the defendant moves to dismiss the complaint under Rule 12(b)(2) the plaintiff bears the burden of establishing personal jurisdiction. *Citadel Group, Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). Where there is no evidentiary hearing held, as in this case, the plaintiff must make only a *prima facie* case of personal jurisdiction based on the submission of written materials. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th

Cir. 2002). The plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (internal citations and quotations omitted).

## DISCUSSION

Timberstone contends that exercising jurisdiction over Idaho Golf is proper. Conversely, Idaho Golf contends that it does not have the requisite minimum contacts with Illinois to be subject to personal jurisdiction.

TimberStone asserts claims under both federal and state law, therefore this Court's jurisdiction rests on federal question, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. With respect to the federal claims, none of the claims contain a special federal rule for personal jurisdiction. Therefore, we look to the law of the forum for the governing rule. *See* FED. R. CIV. P. 4(k)(1)(A). The Illinois long-arm statute permits a court to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c). Because "there is no operative difference" between the Illinois Constitution and the United States Constitution for purposes of personal jurisdiction, a district court needs to only analyze whether the exercise of personal jurisdiction would be contrary to federal due process. *Hyatt Int'l Corp.*, 302 F.3d at 715–16 (internal citations omitted).

Personal jurisdiction may be exercised in accordance with due process if the defendant has sufficient "minimum contacts" with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Hyatt Int'l Corp.*, 302 F.3d at 716; (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Such contacts must not be fortuitous. *Id.* Rather, the defendant must have purposely established minimum contacts with the forum state such that he "should reasonably anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Thus, the Court will determine if it is "fair and reasonable to call the defendant into the state's courts to answer the plaintiff's claim." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010) (citing *Int'l Shoe*, 326 U.S. at 317). This is because "[p]otential defendants should have some control over—and certainly should not be surprised by—the jurisdictional consequences of their actions." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

Personal jurisdiction can be either general or specific. *Daimler AG v. Bauman*, 134 S.Ct. 746, 754-55 (2014). TimberStone does not allege general jurisdiction. General jurisdiction exists where the defendant has "continuous and systematic" business contacts with the forum state, so that the defendant is subject to any action, regardless of whether the action is related to the defendant's contacts. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Timberstone solely seeks to establish that this Court has specific jurisdiction over Idaho Golf.

Courts apply a three-part test to determine if whether specific jurisdiction exists: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673.

**1. Activity Purposefully Directed at Illinois**

Faced with Idaho Golf's lack of outright contacts with Illinois, TimberStone focuses on the intentional nature of Idaho Golf's actions towards TimberStone. TimberStone has alleged an Illinois state law cause of action for intentional interference with prospective economic advantage, an intentional tort. *O'Fallon Dev. Co. v. City of O'Fallon*, 356 N.E.2d 1293, 1301 (Ill. App. Ct. 1976). In pleading an intentional tort, TimberStone seeks to avail themselves of the "expressly aiming" test enunciated in *Calder v. Jones*, 465 U.S. 883, 789 (1984).

The plaintiff in *Calder* alleged that she was libeled by a newspaper article written and edited by the defendants in Florida. *Calder*, 465 U.S. at 783. The plaintiff sued the defendants in California, where she lived and worked, and where the article was circulated, among other places. *Id.* Although the defendants' other contacts with California were minimal, the Supreme Court concluded that they were subject to personal jurisdiction in California. The Court held:

> [Petitioners'] intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of the injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article.

*Id.* at 789-90 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Where, as here, the plaintiff alleges an intentional tort, the purposeful-direction inquiry "focuses on whether the conduct underlying the claims was purposefully directed at the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2009) (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1071 (10th Cir. 2008)). The Seventh Circuit has "distilled three requirements from *Calder* for determining whether conduct was 'purposefully directed' at the forum state: '(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt--that is, the plaintiff would be injured- in the forum state." *Felland v. Clifton*, 682 F.3d 665, 674-75 (7th Cir. 2012) (quoting *Tamburo*, 601 F.3d at 703).

We accordingly take up the first element of the "purposefully direct" inquiry from *Tamburo*. TimberStone has alleged that Idaho Golf utilized the TIMBERSTONE Mark with the intent or design to disrupt TimberStone's prospective economic advantage arising from advertising and providing golf course services.

9

TimberStone asserts that Idaho Golf knew of TimberStone's ownership of the TIMBERSTONE Mark and its operation of the Michigan TimberStone Golf Course. TimberStone continues that Idaho Golf's usage of the TIMBERSTONE Mark was an intentional act designed to disrupt TimberStone's prospective economic advantage. TimberStone's intentional tort allegations are sufficient to meet the "intentional and allegedly tortious" element. *See Tamburo*, 601 F.3d at 704.

The second element, whether the conduct was expressly aimed at the forum state "overlaps with [the third element, which asks] whether the defendant knew the plaintiff would suffer the injury in the forum state, so [the court will] consider the two requirements together." *Tamburo*, 601 F.3d at 704. In *Walden v. Fiore*, - U.S.-, 134 S.Ct. 1115, 1122 (2014) the Supreme Court stressed that for specific jurisdiction to exist, the defendant's relationship with the forum must arise out of the contacts that 'defendant himself' creates with the forum state. *Id.* at 1122. The Court went on to highlight that "a defendant's relationship with the plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. *Id.*; *see also Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (*Walden* made clear that "the plaintiff cannot be the only link between the defendant and the forum."). This remains true even when the plaintiff, as a forum resident, sustains an injury in the forum as a result of an intentional tort. *Walden*, 134 S.Ct. at 1125. "[M]ere injury to a forum resident is not a sufficient connection to the forum . . . [t]he proper question is not where the plaintiff experienced a particular injury or

effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*.

Returning to the facts of the case at bar, TimberStone contends that Idaho Golf's intentional infringement on the TIMBERSTONE Mark sufficiently establishes that Idaho Golf 'expressly aimed' their conduct at TimberStone in Illinois. However, TimberStone's allegations concerning Idaho Golf's conduct fails to establish that Idaho Golf purposefully directed their activity towards Illinois. Initially, Idaho Golf's contacts with Illinois are extremely limited. The only contacts with Illinois that Idaho Golf had engaged in has been with TimberStone directly. The complaint only mentions three occasions where Idaho Golf sent communication to TimberStone in Illinois. In April 2012, TimberStone sent a cease and desist letter to Idaho Golf after learning of their use of the TIMBERSTONE Mark. Also, shortly after receiving the cease and desist letter, Idaho Golf sent a letter back to TimberStone. Over the course of the next few months Idaho Golf called TimberStone on several occasions to resolve the dispute over the use of the TIMBERSTONE Mark. Finally, in April 2014, Idaho Golf sent an e-mail to TimberStone, after TimberStone moved to have Idaho Golf's Second Facebook Page taken down, and offered a monetary sum for use of the TIMBERSTONE Mark. In every instance which Idaho Golf contacted TimberStone in Illinois, Idaho Golf was responding to an action initiated by TimberStone. Moreover, Idaho Golf only made contact with TimberStone in Illinois for the limited purpose of dealing with the usage of the TIMBERSTONE Mark as opposed to

11

engaging in a purely business activity like selling Idaho golf packages to Illinois residents. Idaho Golf's limited communications with TimberStone in Illinois fail to establish that they have sufficient minimum contacts in Illinois. *See Felland v. Clifton*, 682 F.3d 665, 679 (7th Cir. 2012) (noting that telephone, emails and written communication can be relevant factors in determining minimum contacts, but they are not by themselves sufficient to establish specific jurisdiction).

In applying the "expressly aiming" inquiry, the Court must not limit our consideration to only Idaho Golf's contacts with Illinois, but must also consider its targeted conduct towards Illinois. TimberStone asserts that due to Idaho Golf's knowledge that TimberStone was the owner of the TIMBERSTONE Mark, that Idaho Golf's unauthorized usage sufficiently establishes that Idaho Golf expressly aimed their tortious conduct towards Illinois. "There is an important distinction between intentional activity which foreseeably causes injury in the forum and intentional acts specifically targeted at the forum." *TechnoLines, LP v. GST AutoLeather, Inc.*, 799 F.Supp.2d 871, 878 (N.D. Ill. 2011) (citing *Narco Avionics, Inc. v. Sportsman's Market, Inc.*, 792 F.Supp. 398, 408 (E.D. Pa. 1992)). The complaint is absent of any indication that Idaho Golf purposefully directed its activities at Illinois in its usage of the TIMBERSTONE Mark. Even reading the complaint in a light most favorable to TimberStone, the allegations suggest that Idaho Golf was operating the Idaho TimberStone Golf Course in isolation from any Illinois contacts or TimberStone interest. While TimberStone has an interest in the TIMBERSTONE Mark, Idaho

Golf's conduct does not demonstrate that they specifically targeted TimberStone or Illinois. It is not alleged that Idaho Golf was taking Illinois customers familiar with the Michigan TimberStone Golf Course or offered travel packages to Illinois residents so they could travel half way across the country to play golf in Idaho. Nor is it alleged that TimberStone suffered any economic or reputational injury by customers mistakenly booking a trip to the Idaho TimberStone Golf Course as opposed to the Michigan TimberStone Golf Course.

TimberStone briefly argues that Idaho Golf's interactive website, which can be used by customers in Illinois to view the Idaho TimberStone Golf Course, can establish Idaho Golf's jurisdiction in Illinois. The Seventh Circuit has cautioned courts "in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if it is interactive." *Advanced Tactical Ordinance Sys.*, 751 F.3d at 803; (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011)). Therefore, "our inquiry boils down to this: has [defendant] purposefully exploited the [Illinois] market beyond simply operating an interactive website . . .?" *be2 LLC*, 642 F.3d at 558-59. TimberStone does not allege that Idaho Golf has targeted customers in Illinois through its website or that Illinois residents have utilized the website to book rounds of golf in Idaho. The mere fact that Idaho Golf operated an interactive website that could be accessed by Illinois customers is not enough for the Court to exercise jurisdiction over Idaho Golf.

TimberStone has not established that Idaho Golf purposefully directed its activities towards Illinois.

We conclude that the tenuous relationship between TimberStone's claims and Idaho Golf's Illinois contacts is not sufficient to subject Idaho Golf to specific jurisdiction in Illinois.

## CONCLUSION

For the aforementioned reasons, the Court grants Idaho Golf's motion to dismiss for lack of personal jurisdiction. TimberStone's request to engage in jurisdictional discovery is denied.

_____
Charles P. Kocoras
United States District Judge

Dated :11/6/2014